UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| IN RE APPLICATION OF SAVAN MAGIC LTD. TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 2:17-cv-01689-JCM-NJK<br><br>ORDER |

Pending before the Court is a motion to compel discovery filed by Petitioner Savan Magic. Docket No. 34. Respondent Norman Bentley filed a response in opposition, and Petitioner filed a reply. Docket Nos. 38, 40. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons discussed more fully below, the motion to compel is **GRANTED**.[1]

I. **BACKGROUND**

Given the parties' familiarity, the Court provides only a brief recitation of the background. Petitioner is engaged in litigation in Singapore against Defendants Sanjay Pandya, Templar Metal Traders, and Sandstone International. *See, e.g.*, Docket No. 35 at ¶ 3 (Decl. of Michael Jason Lee). The

---

[1] It is within a magistrate judge's authority to resolve disputes for discovery pursuant to 28 U.S.C. § 1782, even though doing so may effectively terminate a miscellaneous action. *See, e.g.*, *In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, Case No. 2:14-cv-00797, 2015 WL 3439103, at *2-3 (D. Nev. May 28, 2015), *objection overruled*, 2015 WL 7258483, at *2-3 (D. Nev. Nov. 17, 2015). As such, this ruling will be fashioned as an order.

crux of that action is the claim that Defendants stole $1,000,000 from Petitioner through fraudulent transfers. *See, e.g.*, *id.* Pandya has responded by alleging, *inter alia*, that it was actually Petitioner and/or Sanjeev Chhabra who are responsible for the theft of the funds. *See id.* at ¶ 9.

With respect to obtaining discovery in the Singaporean litigation, Petitioner has not been entirely successful. Sandstone International has defaulted in that litigation, and is therefore not participating in discovery. *Id.* at ¶ 5. Templar Metal Traders and Pandya have generally refused to produce responsive documents by claiming, *inter alia*, that they no longer possess the documents because of a server malfunction. *See, e.g.*, *id.* at ¶¶ 7, 11-13. Making matters worse, Petitioner itself no longer possesses some of its own relevant documents because of its document retention policy, the operation of which resulted in deletion of relevant documents. *Id.* at ¶ 14.

Against that backdrop, Petitioner sought relief from this Court to obtain discovery from Respondent in Nevada. On June 16, 2017, Petitioner sought an *ex parte* order permitting it to subpoena Respondent for documents and to submit for deposition, pursuant to 28 U.S.C. § 1782. Docket No. 1. On June 22, 2017, the Court denied that petition without prejudice for failing to sufficiently establish that Respondent resides or is found in this District. Docket No. 3. On June 26, 2017, Petitioner renewed its request for an *ex parte* order. Docket No. 4. On June 27, 2017, the Court granted the motion and permitted Petitioner to serve the identified discovery. Docket No. 8. The Court expressly provided, however, that Respondent would be permitted to challenge the discovery once it was served both with respect to whether it should be allowed at all under § 1782 and the scope of the discovery that should be allowed. *Id.* at 2.

On July 12, 2017, Petitioner served the subpoena. Docket No. 25 at ¶ 4. On July 28, 2017, Respondent filed a motion to quash the subpoena. Docket No. 12. On July 31, 2017, the Court ordered the parties to continue their meet-and-confer efforts. Docket No. 13. On August 11, 2017, Petitioner withdrew its initial subpoena and, on August 14, 2017, served an amended subpoena on Respondent. *See* Docket No. 24 at ¶¶ 22-24. On September 6, 2017, the Court denied as moot the then-pending motion in light of the newly issued subpoena. Docket No. 31. The Court ordered that any remaining dispute be presented through a newly filed motion to compel. *Id.* at 2. Petitioner thereafter filed a

motion to compel compliance with the amended subpoena, which is the motion now pending before the Court. Docket No. 34.[2]

## II. STANDARDS

Courts are authorized to allow discovery pursuant to § 1782 once the enumerated statutory requirements have been satisfied. *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004). Even where those statutory requirements have been satisfied, however, the Court is not required to grant the § 1782 petition. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Instead, it analyzes several discretionary factors to determine whether the discovery sought should be allowed. *See id.* at 264-65.

Section 1782 provides in relevant part that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Pursuant to this statutory language, courts are authorized to permit discovery pursuant to § 1782 application where: (1) the person from whom discovery is sought resides or is found in this District; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person. *Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1199 (W.D. Wash. 2013).

If the Court has determined that it has the statutory authority to grant the request, then it turns to whether it should exercise its discretion to do so. *Lazaridis v. Int'l Ctr. for Missing & Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112, (D.D.C. 2011). "Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782." *Four Pillars Enterps. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir.

---

[2] The Court ordered that Respondent's obligation to comply with the subpoenas was stayed pending resolution of the motion practice disputing the subpoenas. Docket Nos. 13, 39.

2002). The discretionary factors that district courts should consider when ruling on a § 1782 application include:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent §1782 aid;
>
> (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance;
>
> (3) whether the §1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
>
> (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Macquarie Bank*, 2015 WL 3439103, at *4. "The court may also consider whether the section 1782 request is a fishing expedition or a vehicle for harassment." *Matter of Action & Prot. Found.*, Case No. 14-cv-80076 MISC EMC (LB), 2015 WL 1906984, at *6 (N.D. Cal. Apr. 27, 2015) (internal quotations and citations omitted).

These discretionary factors "involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives." *In Matter of Application of Action & Prot. Found.*, Case No. 14-cv-80076 MISC EMC (LB), 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014). Courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *See, e.g.*, *Pott*, 945 F. Supp. 2d at 1199 (quoting *Schmitz*, 376 F.3d at 84).

As noted above, this Court has already granted Petitioner's *ex parte* request for the issuance of subpoenas pursuant to § 1782. Docket No. 8. In light of the *ex parte* nature of the request, the Court expressly provided Respondent the ability to challenge the allowed discovery. *See id.* at 2. As the party resisting discovery, Respondent bears the burden of persuasion of demonstrating that discovery should not be allowed. *See, e.g.*, *IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (collecting cases). "[A]ngry rhetoric" does not suffice to meet that burden. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011).

The proper scope of discovery arising out of a § 1782 application is determined by the Federal Rules of Civil Procedure. *See, e.g.*, *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994).

**III.    SECTION 1782 STATUTORY REQUIREMENTS**

Section 1782 includes several statutory requirements, including that: (1) the person from whom discovery is sought resides or is found in this District; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interested person. In granting *ex parte* relief to Petitioner, the Court found that each of these requirements had been met in this case. Docket No. 8. Respondent does not provide any basis to depart from that conclusion now, and instead concedes that the statutory requirements are satisfied. Docket No. 38 at 14. The Court finds the statutory requirements are satisfied.

**IV.    SECTION 1782 DISCRETIONARY ANALYSIS**

The Court next turns to whether the discretionary factors weigh in favor of allowing the discovery sought. Courts have identified four factors to be considered: (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent § 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *See, e.g., Macquarie Bank*, 2015 WL 3439103, at *4. Respondent contests only the last two factors. Docket No. 38 at 14.[3] With respect to those two factors, the Court is not persuaded that either militates against the discovery sought here.

The third factor for consideration is whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions. Respondent contends that the discovery sought in this case is an impermissible end-run around the legal process in Singapore. Docket No. 38 at 14-16. A

---

[3] There is some overlap between the first factor and some of Respondent's arguments. Regardless of the lens by which the arguments are viewed, however, they are not persuasive.

perception that an applicant is side-stepping unfavorable discovery rules in the foreign proceeding can be factor in deciding whether to permit discovery. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013). As Petitioner notes, however, Respondent has not identified any adverse discovery order issued in the underlying action or any Singaporean discovery rule imposing a proof-gathering restriction. *See, e.g.*, Docket No. 40 at 5. Instead, Respondent argues that this factor militates against allowing discovery because he would expect the discovery sought here was also available from parties in the underlying Singaporean litigation or from third-parties through subpoenas issued in that underlying litigation. Docket No. 38 at 16.[4] Such considerations do not reflect circumvention of proof-gathering restrictions. Accordingly, this factor does not militate against permitting discovery.

Respondent next invokes the fourth discretionary factor, contending that complying with the discovery requests would impose an undue burden. Docket No. 38 at 17-20. Courts may reject or trim discovery requests that are unduly burdensome. *See Intel*, 542 U.S. at 265. A party seeking to avoid discovery meets his burden in establishing undue burden by providing specific facts that indicate the nature and extent of the burden. *See, e.g.*, *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (citing *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 529 (D. Nev. 1997)).[5] Conclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient to meet that burden. *Id.* (citing *U.S. E.E.O.C. v. Caesars Ent't*, 237 F.R.D. 428, 432 (D. Nev. 2006)).

---

[4] Respondent contends that Petitioner has failed to use all of the discovery methods available to it in the Singaporean litigation. Docket No. 38 at 16 & n.5. Courts have routinely rejected the suggestion that a party seeking discovery through § 1782 may only do so after exhausting the discovery options in the underlying litigation. *See, e.g.*, *In re O'Keeffe*, Case No. 2:14-cv-01518-RFB-CWH, 2015 WL 1308546, at *4 (D. Nev. Mar. 24, 2015); *In re Potanina*, Case No. CV 14-19-BLG-SPW, 2014 WL 12600449, at *4 (D. Mont. Apr. 16, 2014); *CRT Antitrust Litig.*, 2013 WL 183944, at *3.

[5] Undue burden in the context of nonparty discovery is judged by the same standard as used regarding discovery served on parties to the litigation. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("we will not read 'undue burden' differently just because a non-party was subpoenaed").

Respondent argues that any discovery requested from him is unduly burdensome because it is equally available through the Singaporean litigation and should be available within Respondent's own records. Docket No. 38 at 17-20. Courts may find that a discovery request made pursuant to § 1782 is unduly burdensome if the discovery is equally available in the foreign proceeding from parties to that proceeding. *See Macquarie Bank*, 2015 WL 3439103, at *9 (citing *In re Fischer Advanced Composite Components AG*, Case No. C08-1512-RSM, 2008 WL 5210839, *3-5 (W.D. Wash. Dec. 11, 2008) and *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)). That is not the situation here, however. Petitioner explains that the opposing parties in the Singaporean litigation are not providing the information sought, as Defendants Templar Metal Traders and Pandya are claiming to lack possession of responsive documents and Defendant Sandstone defaulted in those proceedings. *See, supra*, Section I. Moreover, Petitioner explains that it also lacks copies of certain documents sought as a result of the operation of its own document retention policies. *See id.* As such, the documents are not equally accessible through the Singaporean litigation and this contention of undue burden fails.[6]

Respondent next argues that many of the discovery requests are overly broad, such that complying with those requests would impose an undue burden of potentially producing some irrelevant documents. Docket No. 38 at 19-20. While the scope of the discovery in dispute is somewhat broad, the document requests are targeted at obtaining information relevant to the underlying litigation. Most centrally, Petitioner is trying to obtain evidence as to what happened to its money, and the discovery requests are relevant to that inquiry. Moreover, Respondent has provided no meaningful discussion of any burden he would face in complying with the discovery requests as written, instead providing only conclusory assertions of burden. *E.g.*, *id.* Such conclusory assertions are not persuasive generally and especially unpersuasive here as they are seriously undermined by competing assertions from Respondent's counsel that Respondent has <u>no</u> responsive documents. Docket No. 35 at ¶ 23.

---

[6] There is a subset of documents already obtained by Petitioner that overlap with the requests now being propounded. With respect to this overlap, Petitioner explains that it seeks copies from Respondent to challenge the accuracy and authenticity of the copies obtained from Defendant Pandya. *See, e.g.*, Docket No. 34 at 15. This is a proper use of § 1782 discovery, as a party is not required to rely on discovery obtained in foreign litigation that may not be truthful. *See Potanina*, 2014 WL 12600449, at *4.

Respondent makes no attempt to square these contentions by explaining how he is burdened by broad document requests when he is representing that he has no documents to produce at all. The breadth of the discovery requests is not grounds that they be denied.

Respondent next argues that the discovery requests regarding his receipt of Petitioner's allegedly stolen funds and possible use of those funds in purchasing real property are irrelevant. Docket No. 38 at 19-20. The Court is not persuaded. It is clearly relevant whether Respondent received the funds that Petitioner alleges in the Singaporean litigation were stolen and, during this same time period, whether he then spent those funds on a large purchase of real property.[7] Such requests are discoverable, and do not amount to a "fishing expedition."

Respondent lastly argues in conclusory fashion that the requests about his receipt and use of Petitioner's stolen funds are impermissible because such evidence may be used against him in subsequent litigation. Docket No. 38 at 20-21. The two sentences that constitute this argument are insufficient to preserve it, and it has been waived since it was not meaningfully developed. *See, e.g.*, *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013).[8]

In short, the Court's analysis of the discretionary factors shows that the discovery sought here is properly obtained pursuant to § 1782.

---

[7] Respondent also argues that there is no need to produce documents regarding his receipt of transferred monies related to Petitioner's funds because other documents show that the funds had been transferred to Templar Metal Traders. *See* Docket No. 38 at 19. As Petitioner correctly notes, though, the fact that the funds at one time may have been transferred into that particular account is not the end of the story, as Petitioner does not know where the funds are currently. Docket No. 40 at 8.

[8] Moreover, as noted above, the discovery sought is clearly relevant and discoverable to the Singaporean litigation, and other case law makes clear that there is no prohibition on using discovery obtained in § 1782 proceedings in subsequent litigation. *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009-10 (11th Cir. 2015); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 134-35 (2d Cir. 2017).

## V. ADDITIONAL ARGUMENTS

Resorting to a kitchen-sink approach, Respondent lobs numerous additional arguments that the discovery should be denied.[9] These arguments also lack merit.

First, Respondent raises the possibility that the underlying Singaporean litigation may be resolved through a pre-trial motion akin to a motion for summary judgment, obviating the need for any discovery. Docket No. 38 at 5. While the instant motion to compel was pending, however, the Singaporean court denied that motion. Docket No. 42. Accordingly, the motion filed in the Singaporean litigation does not provide a basis for denying the discovery sought by Petitioner.

Second, Respondent argues that the now-disputed amended subpoena should be quashed because it was served in violation of an order by this Court. Docket No. 38 at 4. Not so. In light of an upcoming deposition date and deadline to produce documents pursuant to the initial subpoena served, the Court ordered that Respondent's obligations to provide that discovery should be stayed pending resolution of the discovery dispute presented to the Court. Docket No. 13 at 1. The Court did not opine on whether a second subpoena could be served.[10] That the Court ordered that Respondent should be allowed to avoid providing discovery so that this dispute could be resolved first is not grounds to quash a later-served subpoena. Accordingly, the Court's previous interim order does not provide a basis for denying the discovery sought vis-à-vis the amended subpoena.

Third, Respondent argues that Petitioner's business model violates international gaming laws, which it contends is grounds to deny discovery pursuant to the unclean hands doctrine. Docket No. 38 at 10-12. Respondent provides no legal authority that such an argument has any place in a case regarding a § 1782 discovery request, and none of the case law cited is remotely akin to the situation faced here. The only issue in this miscellaneous action is whether Petitioner should be provided

---

[9] Throughout this order, the Court addresses most of the arguments raised by Respondent. Any arguments not addressed explicitly herein have been rejected to the extent they are inconsistent with the outcome of this order.

[10] Indeed, the Court ordered the parties to continue their meet-and-confer efforts. *See id.* at 1-2. Respondent fails to explain why the Court should fault Petitioner for serving a second subpoena to correct an insufficiency with its initial subpoena as a matter ancillary to the meet-and-confer process.

discovery for use in on-going foreign litigation, and Respondent has not persuaded the Court that it should transform this proceeding into an adjudication regarding the propriety of Petitioner's underlying business model. Accordingly, the accusation of illegality of Petitioner's business model does not provide a basis for denying the discovery sought from Respondent.

Fourth, Respondent argues that part of the declaration submitted with Petitioner's *ex parte* motion is false. Docket No. 38 at 6. Although Respondent points to an alleged factual inaccuracy, it fails to explain how the Court should resolve that dispute or even the standards that apply with respect to any disputed facts. *Cf. In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1035 (N.D. Cal. 2016) (noting lack of guidance regarding assignment of burdens in this context). Moreover, and even more significantly, Respondent fails to explain in meaningful fashion how resolving any of the identified disputed issues of fact are material to the outcome of the pending motion. Instead, Respondent falls back on general contentions that the factual dispute "raises the question as to whether the Court would have come to the same result" on its decision on the *ex parte* motion, without any explanation why the result would be different based on Respondent's recitation of the disputed facts. Docket No. 38 at 7; *see also id.* (asserting that "the basis for granting the 1782 Application was *apparently* predicated on [the allegedly] false statements" (emphasis added)).[11] The Court declines the invitation to resolve factual disputes without any indication that doing so would impact in any way the motion currently being adjudicated. Accordingly, the identified factual disputes do not provide a basis for denying the discovery sought by Petitioner.

Fifth, Respondent argues that certain aspects of that same declaration are inadmissible, focusing in large part on a lack of foundation for the statements made. Docket No. 38 at 7. In considering

---

[11] Respondent states cryptically that, "if Respondent had no business relationship with Petitioner then in turn, Petitioner would have no claim against Defendants, let alone standing to pursue its action." Docket No. 38 at 7. Hence, although not entirely clear, it appears Respondent is claiming this factual dispute undermines Respondent's ability to pursue the Singaporean litigation against the defendants sued there. Respondent has not provided the Court with legal authority or meaningfully developed argument why this Court should be analyzing the merits of the underlying action in Singapore as part of the instant discovery dispute. Arguments regarding the validity of the claims in the underlying proceeding are better left to the foreign tribunal to resolve. *See, e.g.*, *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010).

whether to allow § 1782 discovery, courts may refuse to consider declarations that fail to provide sufficient foundational information such as the requisite personal knowledge. *See Knaggs v. Yahoo! Inc.*, Case No. 15-mc-80281-MEJ, 2016 WL 3916350, at *5 (N.D. Cal. July 20, 2016). Problematically for Respondent here, however, is that he has again failed to explain how exclusion of any of the purportedly inadmissible evidence would impact in any way the adjudication of the pending motion. As with the factual disputes identified, the Court declines to rule on evidentiary objections without any indication that doing so would impact in any way the motion currently being adjudicated. Accordingly, Respondent's evidentiary objections do not provide a basis for denying the discovery sought by Petitioner.

## VI. CONCLUSION

For the reasons discussed more fully above, the motion to compel is **GRANTED**. The subpoenaed documents shall be produced within 14 days of this order, and the deposition shall occur within 30 days of this order.

IT IS SO ORDERED.

DATED: December 18, 2017

_____
NANCY J. KOPPE
United States Magistrate Judge